IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:18-cr-00173 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| KEITH JEFFRIES, | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT KEITH JEFFRIES' |
| Defendant. | ) | SENTENCING MEMORANDUM |
| | ) | |

Now comes the United States of America, by and through its attorneys, Justin Herdman, United States Attorney, and Carmen E. Henderson and Alejandro A. Abreu, Assistant United States Attorneys, and respectfully submits this Response to Defendant Keith Jeffries Sentencing Memorandum (Doc. # 124) setting forth the United States' position regarding the sentencing for the Defendant. For the reasons set forth below and those to be articulated at the sentencing hearing, the United States respectfully request a sentence of imprisonment at the low-end Jeffries' sentencing range.

I.  **FACTUAL BACKGROUND**

To support its sentencing position, the United States offers the following summary of the Defendants' conduct. The United States also refers the Court to the description included in the PSR. (Doc. # 120 at 4-6). Defendant Keith Jeffries was a tax preparer and operated a tax preparation business known as Krew Time, LLC. Krew Time, LLC was registered as a Limited Liability Corporation with the State of Ohio on June 28, 2007, with Defendant's wife listed as the registered agent. As part of his tax preparation business, Defendant and his employees

prepared tax returns for clients under the name Krew Time, LLC. These clients gave personal identifying information ("PII"), including names, addresses, social security numbers, and dates of birth to Defendant and his employees so that they could prepare the tax returns. Defendant and his employees prepared tax returns at three locations owned by Krew Time, LLC.

      Defendant and his co-conspirators engaged in a scheme to prepare and file false income tax returns claiming false and inflated claims for tax refunds for Krew Time clients. Defendant prepared and submitted to the IRS, federal tax returns for multiple persons, named in the indictment and some of who testified at trial, which included falsified filing statuses, itemized deductions, tax credit information, and business income and expenses to obtain income tax refunds to which neither they nor the Krew Time clients were entitled. Defendant knew that the tax returns submitted to the IRS on behalf Krew Time clients contained false information.

      At trial, there was testimony that Krew Time, LLC filed over 800 tax returns a year. Out of these 800 returns, the refund rate was 100% in 2012-2014, meaning that every Krew Time, LLC client received a tax refund. Similarly, in 2015, the refund rate for Krew Time, LLC was 99%. Former Krew Time, LLC clients testified at trial that Defendant falsified filing statuses, itemized deductions, business income, rental income, education credits, and other items on their returns. Defendant knew that he was filing false information with the IRS and did so in an attempt to maximize refunds. At trial, some former clients testified that they personally had known Defendant for years and he knew they were married. Despite this knowledge, Defendant falsified their filing statutes as head of household to maximize refunds. Additionally, many former clients testified that they did not tell Defendant or provide Defendant with any documentation to support falsified itemized deductions, business income and expenses, or rental income. Nevertheless, Defendant included these items on the client's returns to maximize

refunds. Former clients also testified that despite Defendant including the education credit on their return they did not tell or provide Defendant any documentation suggesting they had incurred education expenses.

Defendant included this false information on tax returns despite being previously told he was filing false or fraudulent income tax returns. At trial, there was testimony that Defendant was approved on November 14, 2006 for an Electronic Filing Identification Number ("EFIN"), which is a number issued by the IRS to individuals or firms that have been approved as authorized IRS e-file providers. There was also testimony that Defendant was suspended from participating in the IRS e-file program on January 27, 2009 and was informed by the IRS that his suspension was a result of him preparing false or fraudulent income tax returns. Defendant's wife was also suspended from the IRS e-file program for allowing Defendant to utilize her EFIN after being previously sanctioned from participating in the IRS e-file program. These suspensions and warnings did not deter Jeffries from filing fraudulent returns. Rather, at trial, a co-defendant testified that Defendant instructed her to apply for an EFIN which he and other employees at Krew Time, LLC began using to file the fraudulent tax returns that were included in the scheme.

## II.   APPLICABLE LEGAL STANDARDS

A well-established legal framework guides the Court's sentencing determination. The advisory Guidelines range serves as "the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007); see also United States v. Collington, 461 F.3d 805, 807 (6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on

empirical data and national experience, guided by a professional staff with appropriate expertise.'" Kimbrough v. United States, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

**A.      Sentencing Guidelines Computation**

1.      Defendant Keith Jeffries Calculation

The United States concurs with the Guidelines calculations set forth in the PSR. (Doc. #120). Defendant Keith Jeffries' base offense level is 20 because the loss amount resulting from the fraudulent returns he and his employees filed was approximately $1,404,405. (Doc. #120 at ¶ 29). Additionally, 2 levels are added because Jeffries was in the business of preparing or assisting in the preparation of tax returns. (U.S.S.G. § 2T1.4(b)(1)(B)).

Additionally, 4 levels are added because Defendant Jeffries as the owner of Krew Time, LLC was the organizer and leader of the tax fraud conspiracy, which involved at least five participants. (Doc. #120 at ¶ 32). Jeffries three co-defendants were convicted of filing fraudulent tax returns under his direction while working at Krew Time, LLC. Additionally, Lance Massey testified at trial that he also worked as a tax preparer at Krew Time, LLC and prepared fraudulent tax returns under Jeffries' direction. Specifically, Massey testified that, while working at Krew Time, LLC , he prepared his own fraudulent tax return under the direction of Jeffries and that his return was approved and submitted to the IRS by Jeffries. Jeffries, his three co-defendants, and Massey total five participants in the scheme. However, there is also evidence of three additional participants. These additional participants who each prepared fraudulent tax returns at Krew Time, LLC include Daniel Gatheright, Danielle

4

Gatheright, and Lawrence Smedley. Therefore, there is evidence supporting eight participants in the scheme and that Jeffries was the organizer and leader the role enhancement is appropriate.

Thus, Jeffries' adjusted offense level is 26. Jeffries has not demonstrated acceptance of responsibility and was convicted after a trial. Therefore, his total offense level remains at 26. Jeffries falls into Criminal History Category III. ((Doc. #120 at ¶ 49). The corresponding Guidelines range for Jeffries is thus 78 to 97 months.

**B.	Application of § 3553(a) Factors**

1. <u>Nature and Circumstances of Offense</u>

The indictment in this case was not the first time Jeffries was made aware that he was filing false and fraudulent tax returns. Over nine years prior to being indicted, Jeffries was suspended from participating in the IRS e-file program on January 27, 2009 and was informed by the IRS that his suspension was a result of him preparing false or fraudulent income tax returns. Despite his suspension and knowledge, Jeffries continued to file fraudulent returns. After being suspended from the program, he utilized the EFIN of his wife and then his co-defendant Linette Coleman to continue his fraud. Additionally, Jeffries did not file a small amount of fraudulent returns. Rather, Jeffries' company, Krew Time, LLC, filed over 800 tax returns a year with a 100% refund rate.

Furthermore, Jeffries did not use just one method of fraud to maximize refunds for his clients. Instead, Jeffries used various methods such as falsified filing statues, itemized deductions, business income, rental income, education credits, and other items on his client's returns. Thus, the seriousness and pervasiveness of Jeffries' conduct along with his lack of respect for the law warrant a Guidelines sentence.

2.  History and Characteristics of the Defendant

As stated above, Jeffries was notified that he was filing falsified and fraudulent income tax returns and suspended from the EFIN program in 2009. Jeffries was not criminally prosecuted at that time. Jeffries' behavior of continuing the same type of criminal conduct by utilizing the EFIN of others after being suspended from the program demonstrates his absence of respect for the law. Jeffries lack of respect for the law is further highlighted by his criminal history category. Jeffries was previously convicted of perjury and permitting drug abuse. Jeffries was sentenced to probation for each of his previous offenses. In fact, Jeffries was on probation for his permitting drug abuse conviction at the time he committed the instant offense. Thus, Jeffries' history and characteristics, particularly his continued tax fraud after suspension and while on probation, merits a Guidelines sentence.

3.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

Imposing a Guidelines sentence would reflect the seriousness of Jeffries' offenses, promote respect for the law, and provide just punishment. As demonstrated above, Jeffries' conduct was egregious and his crime was serious. Moreover, this is a situation where there is a serious and an obvious apparent need to impose a sentence to promote respect for the law. Jeffries was not criminally charged the first time he was found to be filing false and fraudulent income taxes. Additionally, Jeffries was not sentenced to a term of imprisonment after his previous convictions and he continued his criminal conduct despite being on probation. Only a significant sentence will promote proper respect for the law and provide just punishment for his crimes.

4. <u>The Need of the Sentence Imposed to Afford Adequate Deterrence and Protect the Public from further crimes of the Defendants</u>.

Imposing a sentence within the Guidelines range would deter the Jeffries and others from engaging in tax fraud. <u>United States v. Flores-Machicote</u>, 706 F.3d 16, 22 (1st Cir. 2013) ("Deterrence is widely recognized as an important factor in the sentencing calculus."); <u>United States v. Miller</u>, 484 F.3d 964, 967-68 (8th Cir. 2007) ("general deterrence . . . is one of the key purposes of sentencing . . . ."); <u>United States v. Jackson</u>, 835 F.2d 1195, 1199 (7th Cir. 1987) (Posner, J., concurring) ("deterrence is the surest ground for punishment . . . since incapacitation may, by removing one offender from the pool of offenders, simply make a career in crime more attractive to someone else, who is balanced on the razor's edge between criminal and legitimate activity and who now faces reduced competition in the crime 'market.'").

As courts have noted, deterrence is particularly important in "white-collar crimes, because they are often perceived as carrying substantially lesser punishment than other comparable offenses." <u>United States v. Panyard</u>, No. 07-20037-2, 2009 WL 1099257, at *12 (E.D. Mich. April 23, 2009). As the Sixth Circuit stated in <u>United States v. Peppel</u>, 707 F.3d 627, (6th Cir. 2013), "because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." <u>Peppel</u>, 707 F.3d at 641. Jeffries crime was not only rational and calculated, but it spanned many years. Jeffries had numerous opportunities to cease his criminal conduct – such as when he was suspended from the EFIN system– but instead he chose to continue and found others to utilize to continue his fraud. A sentence within the Guidelines range is necessary to deter the Jeffries and the public from continuing to engage in tax fraud.

7

5. <u>Jeffries' Medical Condition does not Warrant a Departure from the Guidelines.</u>

Ordinarily, physical condition is not relevant in determining whether a sentence should be outside the applicable guideline range. U.S.S.G. § 5H1.4. However, the Guidelines do provide that the Court may consider a departure from the applicable range where there is "extraordinary physical impairment." *Id.* In considering what qualifies as extraordinary, courts in this district have required "particularized findings regarding the specific impairments in question." <u>United States v. Streat</u>, 893 F. Supp. 754, 756 (N.D. Ohio 1995).

Jeffries' sentencing memorandum requests a downward departure based on Jeffries' health condition. (R. 124: Def. Sent. Memo, PageID 768-69). However, there is little factual basis for finding that Jeffries' medical condition is an extraordinary physical impairment. In fact, his doctor's letter is evidence of the contrary. This Court continued Jeffries' sentencing hearing based on his physician's letter outlining the proposed medical procedure and the recommended recovery time. (R. 125: Order, PageID 771). As noted in the letter, the procedure was to be undertaken to "relieve [Jeffries'] symptoms, [] improve his quality of life, lower his risk for medical complications while he serves his time." (R. 124-1: Doctor's Letter, PageID 770). The implication is that Jeffries can serve a prison sentence with the proper care after he has recovered from the surgery. While Jeffries may have continuing needs related to his condition, there is no evidence that his physical impairment is extraordinary to the point that it warrants a downward departure.

8

C.  **Restitution**

Restitution to the Internal Revenue Service ("IRS") is directed by the Guidelines and mandated by law. U.S.S.G. § 5E1.1; 18 U.S.C. § 3663A. Thus, the United States requests that the Court order Jeffries to pay, jointly and severally with Linette Coleman and Brian Peacock, restitution in the amount of $315,213 to the IRS.

III.  **CONCLUSION**

For the foregoing reasons, as well as those to be articulated at the sentencing hearing, the United States respectfully requests that this Court sentence Jeffries to at least the minimum Guidelines sentence of 78 months. The United States recognizes that the statutory maximum sentence on Count 1 is 5 years and the statutory maximum on counts 3-8 and 10 is 3 years. Thus, the United States requests that the Court sentence Jeffries to 60 months on Count 1 and at least 18 months on counts 3-8 and 10 to run consecutively to his sentence on Count 1. This will achieve a minimum Guideline sentence which is appropriate and necessary in this case.

Respectfully submitted,

JUSTIN HERDMAN
United States Attorney

By:  /s/ *Alejandro A. Abreu*
Carmen E. Henderson (OH: 0089212)
Alejandro A. Abreu (OH: 0089477)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3967 / 3620
(216) 522-8355 (facsimile)
Carmen.Henderson@usdoj.gov
Alejandro.A.Abreu@usdoj.gov

9

## CERTIFICATE OF SERVICE

    I hereby certify that on this 25th day of March 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                            /s/ *Alejandro A. Abreu*
                                            Alejandro A. Abreu
                                            Assistant U.S. Attorney